# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Karen Locke-Deacon, Individually and as Executrix of the Estate of Arthur Deacon, III,<br><br>   Plaintiff,<br><br>v.<br><br>Mount Snow Ltd.<br><br>   Defendant. | Civil Action No.: 3:17-cv-00102<br><br><br><br>January 24, 2017 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, KAREN LOCKE-DEACON, individually and as Executrix of the Estate of Arthur Deacon III, ("Plaintiff") by and through her attorneys, Saxe Doernberger & Vita, P.C., alleges upon information and belief as follows:

## COUNT I – NEGLIGENCE

### The Parties

1. Plaintiff is a citizen of the State of Connecticut, who presently resides at 128 Holcomb Street, Simsbury, Connecticut 06070, and is the Executrix of the Estate of Arthur Deacon III.

2. Upon information and belief, Mount Snow Ltd. ("Defendant") is a company organized and existing under the laws of the State of Vermont with its principal place of business located at 39 Mount Snow Road, West Dover, Vermont, 05356.

**Jurisdiction and Venue**

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the Plaintiff and Defendant are citizens of different states, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the matter presents a case of actual controversy between the parties.

4. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5. Defendant is subject to the personal jurisdiction of this Court pursuant to Conn. Gen. Stat. § 33-929(f), as Defendant solicits and transacts business in Connecticut and entered into a contract in Connecticut.

**Factual Allegations**

6. Defendant Mount Snow Ltd. is the owner and operator of the Mount Snow Ski Resort located in West Dover, Vermont.

7. In September 2015, Arthur Deacon, III ("Mr. Deacon") purchased tickets to snow board on Mount Snow.

8. Mr. Deacon purchased the tickets from Defendant via the Connecticut Après-Ski Team (CAST).

9. Defendant advertises and sells tickets for Mount Snow to Connecticut residents through CAST, and advertises and otherwise solicits business generally throughout Connecticut.

10. On January 24, 2016, Mr. Deacon used one of the tickets purchased to snowboard at Mount Snow.

11. Mr. Deacon was an expert snow boarder with many years of experience who regularly skied steep and challenging trails.

12. Around mid-morning on January 24, 2016, Mr. Deacon took the Defendant's ski lift to Rip Cord Trail, a double black diamond trail which is the steepest and most difficult trail on Mount Snow.

13. Mr. Deacon had snow boarded on Rip Cord Trail numerous times before January 24, 2016, and was very familiar with the trail.

14. Upon information and belief, prior to January 24, 2016, Rip Cord Trail had been closed for most of the ski season due to the lack of snow and treacherous ski conditions.

15. Upon information and belief, the conditions on Rip Cord Trail were hard packed and icy, without any of the moguls that are typically known to exist on the steep trail.

16. There was an outcropping of trees on the westerly side of Rip Cord Trail, which had a double pitch both northerly and westerly.

17. As Mr. Deacon was skiing down Rip Cord Trail, approximately a third of the way down he fell, and began to slide down the steep icy pitch board first while trying to set an edge on the mountain.

18. As Mr. Deacon was falling, he encountered an unnatural object known as a "snow making whale," which was a hard pile of ungroomed manmade snow entirely iced over.

19. The presence of the snow making whale and pitch of the slope of the trail in Mr. Deacon's path caused Mr. Deacon to flip 180 degrees, falling head first, at which

3

point he could not control his trajectory and was jettisoned head and chest first into a tree, after which his body went limp, hit a second tree, and then hit and landed on a snow making pipe.

20. Upon information and belief, Mr. Deacon was killed upon impact with the first tree.

21. When snow patrol arrived to collect Mr. Deacon, it was too dangerous for them to ski his body off the steep pitch, and they were forced to belay his body with ropes to the bottom of the steep section of Rip Cord Trail before skiing him to a rescue location.

22. After creating snow making whales, it is standard procedure and expectation that ski mountains will then flatten out the whales with snow groomers.

23. Upon information and belief, Rip Cord Trail is so steep that snow groomers cannot safely go up and down the slope to smooth out the snow making whales.

24. Upon information and belief, in order to groom snow making whales on Rip Cord Trail, Defendant must employ a cable and winch a snow cat to an anchor at the top of the mountain.

25. Upon information and belief, the process of grooming snow whales using an anchored snow cat is extremely expensive and complicated.

26. The presence of multiple ungroomed snow making whales on Rip Cord Trail created an unexpected hazard, that was neither an ordinary or necessary risk that a skier would be expected to anticipate.

27. As the owner and operator of Mount Snow, Defendant owed Mr. Deacon a duty of care in (1) determining the safety conditions of its trails prior to opening any trails to the public, (2) ensuring that any snow making whales were properly groomed, (3)

maintaining safe and unobstructed conditions on the trails opened to the public, and (4) warning of any foreseeable unsafe conditions on its trails.

28. Defendant failed to exercise reasonable care and skill in the performance of its duties by (1) opening Rip Cord Trail to the public when the icy conditions, lack of moguls and presence of ungroomed snow making whales made the trail treacherous for even the most advanced skiers to ski, (2) failing to ensure that all snow making whales on Rip Cord Trail were properly groomed and did not pose a hazard to any skiers, (3) failing to maintain safe and unobstructed conditions on Rip Cord Trail, including permitting an out cropping of trees to exist on a trail where the topography would funnel a fallen skier directly into the trees, and (4) failing to warn Mr. Deacon of the foreseeable unsafe conditions on Rip Cord Trail.

29. The failure of Defendant to exercise proper care and skill in performing its duties caused the death of Mr. Deacon.

30. As a proximate cause of Defendant's negligence, Plaintiff has suffered damages.

## **COUNT II – LOSS OF CONSORTIUM**

1- 29. The allegations of paragraphs 1 through 29 of the First Count are hereby repeated and realleged as if fully set forth herein.

31. At the time of Mr. Deacon's accident, Mr. Deacon and Mrs. Karen Locke-Deacon were married.

32. As a proximate cause of the wrongful and negligent acts of the Defendant, Mrs. Karen Locke-Deacon has suffered, and will continue to suffer in the future, loss of

consortium, loss of society, affection, assistance, financial support and conjugal fellowship.

## DEMAND FOR TRIAL BY JURY

Demand is hereby made for trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that she be awarded money damages individually and as Executrix of the Estate of Arthur Deacon III together with such other and further relief as may be just and equitable.

DATED:   Trumbull, Connecticut
         January 24, 2017

/s/Nicole C. Bikakis
Edwin L. Doernberger
eld@sdvlaw.com
Nicole C. Bikakis, Esq. (ct29848)
ncb@sdvlaw.com
SAXE DOERNBERGER & VITA, P.C.
35 Nutmeg Drive, Suite 140
Trumbull, CT 06611
Telephone:   (203) 287-2100
Fax:         (203) 287-8847
*Attorneys for Plaintiff*